UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/28/2023__

TONY BIRITTIERI,

                        Plaintiff,

     -against-

WHOLE FOODS MARKET GROUP, INC.,

                        Defendant.

No. 21-cv-8703 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tony Birittieri ("Plaintiff" or "Birittieri") commenced this action against Defendant Whole Foods Market Group, Inc. ("Defendant" or "Whole Foods"), asserting claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 and New York State Human Rights Law ("NYSHRL"). (Amended Complaint ("Am. Compl."), ECF No. 15.) Presently before the Court is Defendant's motion to dismiss all claims pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss, and this Court orders the case TRANSFERRED to the District of Connecticut.

## FACTUAL BACKGROUND

The following facts are derived from the Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

Birittieri was hired by Whole Foods on March 15, 2019. (Am. Compl. at ¶ 14.) Birittieri worked at a Whole Foods location in Greenwich, Connecticut. (*Id.* at Ex. A; Declaration of Nancy

Castillo ("Castillo Dec.") at ¶ 4, ECF No. 19.[1])  Birittieri has never worked for a Whole Foods location in New York.  (Castillo Dec. at ¶ 4.)  Birittieri was hired as a part-time employee, but he earned a full-time position and was "told by his supervisors that he was doing a great job and had a future within the company."  (Am. Compl. at ¶¶ 14–15.)

Birittieri suffers from several disabilities, including chronic knee issues, high blood pressure, and spinal stenosis.  (*Id.* at ¶ 21.)  These disabilities made it difficult for Birittieri to work night shifts.  (*Id.* at ¶ 23.)  When Birittieri asked his supervisor Ian if he could provide a doctor's note so he could take nights off, Ian advised Birittieri, "I wouldn't do that if I were you."  (*Id.* at ¶ 25.)

On or about September 21, 2020, Birittieri injured his back at work while cleaning kitchen equipment.  (*Id.* at ¶ 31.)  Birittieri received a note from his doctor advising Whole Foods that Birittieri required time off from work that week to recover from his injuries.  (*Id.* at ¶ 33.)  The doctor's note also instructed Whole Foods to restrict Birittieri's physical labor that week.  (*Id.* at ¶ 34.)  After seeing the doctor, Birittieri notified Ian that he would take the week off.  (*Id.* at ¶ 35.)  Birittieri, however, was instructed to return to work on September 25, 2020.  (*Id.* at ¶ 36.)  Ian assured Birittieri he could "take it easy" when he returned to work.  (*Id.* at ¶ 38.)  But when he returned, Birittieri was "forced to do his everyday duties."  (*Id.* at ¶ 39.)  As a result, Birittieri continued to experience back pain, and the next day, he complained that the pain was "killing" him and informed Ian he wasn't sure he could finish the day.  (*Id.* at ¶¶ 40, 42.)  In response, Ian told Birittieri to "do the best you can."  (*Id.* at ¶ 43.)  On September 27, 2020, Birittieri reported his back pain to Ian, and Ian again asked Birittieri to "finish the day off because they were busy."  (*Id.* at ¶¶ 45–46.)  Although Birittieri requested accommodations (*id.* at ¶¶ 34), Whole Foods

---

[1] A court may rely on additional materials outside the pleadings when ruling on a Rule 12(b)(2) motion.  *See Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016).

provided none (*id.* at ¶¶ 44, 46).  Birittieri was terminated on September 28, 2020.  (*Id.* at ¶ 48.)  Whole Foods did not provide Birittieri any reasons for his termination.  (*Id.* at ¶ 49.)

Birittieri is a New York resident.  (*Id.* at ¶ 55.)  After his termination, Birittieri struggled to pay his bills, and as a result, he borrowed money from his father to pay utilities.  (*Id.* at ¶ 57.)  His father is also a New York resident.  (*Id.*)  As a result of his termination, he has also experienced "stress, depression, and anxiety" while residing in the State.  (*Id.* at ¶ 59.)  By losing access to health insurance, Birittieri has experienced—while residing in New York—further "stress, inconvenience, and aggravation," in addition to "physical pain and limitation as a result of his medical conditions."  (*Id.* at ¶ 60.)

Birittieri alleges Whole Foods "operates multiple . . . stores in New York State" and has "purposefully avail[ed] themselves of the privileges of conducting activities within New York, thus invoking the benefits and protections of its laws."  (*Id.* at ¶¶ 54, 61.)

## PROCEDURAL HISTORY

On October 22, 2021, Plaintiff commenced the present action.  (ECF No. 1.)  On February 9, 2022, Plaintiff filed its Amended Complaint (ECF No. 15) against Defendant, alleging claims for disability discrimination, failure to provide reasonable accommodations, and retaliation.  Defendant then filed the present motion to dismiss.  This Court first turns to assess whether it can exercise personal jurisdiction over the Defendant.

## LEGAL STANDARD

Where a party moves to dismiss an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss

by pleading in good faith legally sufficient allegations of jurisdiction. *See id.* (citing *Ball v. Metallurgie Hoboken–Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)); *see also* Fed. R. Civ. P. 11. That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a prima facie showing of personal jurisdiction over a defendant. *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) (citation omitted); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

"A prima facie showing of jurisdiction 'does not mean that plaintiff must show only some evidence of jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Framsabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quotation omitted).  Pleadings that assert only "conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as a factual allegation" do not meet this burden. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (quotation omitted).  While a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, *see Ball*, 902 F.2d at 197, it should "not draw 'argumentative inferences' in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

## **DISCUSSION**

The Court determines whether personal jurisdiction exists first by applying the long-arm statute of the forum state—here, New York—and then analyzing whether personal jurisdiction comports with the Due Process Clause of the United States Constitution. *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 362 (S.D.N.Y. 2020), adhered to in part on reconsideration, No. 18-CV-1774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) (citing *Penguin Grp. (USA) Inc. v. Am.*

*Buddha*, 609 F.3d 30, 35 (2d Cir. 2010); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010); and *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)). "Under the New York long-arm statute, a court in New York can exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under CPLR § 301, or specific jurisdiction, under CPLR § 302." *Wallert v. Atlan*, 141 F.Supp.3d 258, 271 (S.D.N.Y. 2015).

## I.     General Jurisdiction: N.Y. C.P.L.R. § 301

Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if she is domiciled in New York, served with process in New York,[2] or continuously and systematically does business in New York.  *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 565 N.E.2d 488 (1990); *Pichardo v. Zayas*, 122 A.D.3d 699, 702, 996 N.Y.S.2d 176, 180 (2d Dept. 2014); *see also Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.*, No. 04-CV-0982, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004).  General jurisdiction permits a court to adjudicate any cause of action against a defendant that meets these criteria, "wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

Recent caselaw is clear: general jurisdiction only extends to a forum beyond a corporation's state of incorporation or principal place of business in the "exceptional case." *In re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)).  The "exceptional case" is one in which a corporation's contacts are "so substantial and of such a nature as to render the corporation at home in that state."

---

[2] Defendant was served by way of New York State's Secretary of State.  (ECF No. 5.)  Defendant is a foreign corporation that is registered to do business in New York, and presumably Defendant has appointed the New York State Secretary of State as its agent for service of process.  This "run of the mill registration and appointment" is insufficient to constitute corporate "consent," especially in light of recent Supreme Court decisions. *See, e.g., Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 637 (2d Cir. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).

*Daimler*, 571 U.S. at 139 n. 19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447 (1952)).   *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) is an example of the "exceptional case."   *Daimler*, 571 U.S. at 139 n. 19.   In *Perkins*, the defendant was a Philippine mining corporation that had suspended operations during World War II.   342 U.S. at 447–48. Because the Philippines were occupied by the Japanese during the war, the mining corporation shifted the whole of its operations to Ohio.   *Id.*   In fact, the only business conducted by the mining corporation was conducted in Ohio.   *Id.*   As such, when the corporation was sued in Ohio, the Supreme Court held the corporation was amenable to suit—even for claims arising outside Ohio— because Ohio was the "corporation's principal, if temporary, place of business."   *Daimler*, 571 U.S. at 130 (internal citations omitted).   Meanwhile, in *Daimler*, a German corporation was sued in California court.   *Id.* at 120–21.   Despite its U.S. subsidiary's contacts to California—which included multiple facilities, a regional office, and "its status as the largest supplier of luxury vehicles to the California market," *id.* at 123—the Supreme Court held that the corporation's contacts (even with its subsidiary's contacts imputed to it) did not make it "at home" in California. *Id.* at 139 ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" (internal quotations omitted).).   To that end, the *Daimler* Court concluded:

> A corporation that operates in many places can scarcely be deemed at home in all of them.   Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.   Nothing in *International Shoe* and its progeny suggests that "a particular quantum of local activity" should give a State authority over a "far larger quantum of ... activity" having no connection to any in-state activity.

> *Id.* at 139 n. 20 (internal citations omitted).

Here, aside from mere conclusory allegations that Whole Foods "do[es] business" or "conduct[s] business" or "activities" in New York (*see* Am. Compl. at ¶¶ 12, 61), Plaintiff does not allege Whole Foods is domiciled in New York or has contacts "so continuous and systematic" to render Whole Foods at home in the state. *Daimler*, 571 U.S. at 138–39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   At most, Plaintiff alleges Whole Foods operates stores in New York, which is more akin to the contacts at issue in *Daimler*, *see* 571 U.S. at 123 (multiple facilities, a regional office, and status as largest supplier of luxury vehicles in state), than the *de facto* "at home" presence in *Perkins*, *see* 342 U.S. at 447–48 (temporary international headquarters and home of company president, repository of company's files, and state from where president oversaw company's activities).   Accordingly, Defendant Whole Foods is not subject to this Court's general jurisdiction.   This Court now turns to assess whether Whole Foods is subject to specific jurisdiction under New York's long arm statute.

## II.    Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(1) (Business Activities)

N.Y.C.P.L.R. § 302(a)(1) ("§ 302(a)(1)") provides that personal jurisdiction exists over a non-domiciliary defendant that "transacts any business within the state or contracts anywhere to supply goods or services in the state."   Plaintiffs must meet two requirements to establish personal jurisdiction under § 302(a)(1): "(1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."   *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).   A defendant "transact[s] business" in the state if it has engaged in "purposeful activity" by "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."   *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967)).

Here, Plaintiff does not allege that his claims—that Whole Foods discriminated against Plaintiff on the basis of his disabilities—arose as a result of Whole Foods's business activities in New York.  Instead, Plaintiff was purportedly hired, and fired, by a Whole Foods located in Greenwich, Connecticut.  (Am. Compl. at Ex. A.)  Accordingly, Defendant is not subject to this Court's personal jurisdiction under § 302(a)(1).

## III.    Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(2) (Tortuous Conduct Within New York)

N.Y.C.P.L.R. § 302(a)(2) ("§ 302(a)(2)") provides that personal jurisdiction may apply where a defendant commits tortuous conduct while physically present in New York.  Prior to its amendment in 1966, the New York long-arm statute was consistently read to "cover[ ] only a tortious act committed (by a nondomiciliary) in this State." *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 464 (1965).  Since then, a small number of lower state courts have, on narrow grounds, expanded the rule to recognize that "not all tortious acts that occur within the State of New York need be committed while the defendant is physically present within New York boundaries for purposes of CPLR § 302(a)(2)." *Davidoff v. Davidoff*, 12 Misc.3d 1162(A), 819 N.Y.S.2d 209, at *8 (Sup. Ct. 2006).

However, the Second Circuit continues to adhere to the traditional, stricter rule. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) (reaffirming that a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)").  The endurance of the rule is further reflected by the majority of district court opinions on the subject. *See, e.g.*, *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 418 (S.D.N.Y. 2010) (quoting *Bank Brussels Lambert*, 171 F.3d at 789–790) ("New York courts and the Second Circuit have consistently interpreted § 302(a)(2) jurisdiction narrowly and have held

that to qualify for jurisdiction under this subsection, a defendant's act or omission [must have] occur[red] within the State.") (collecting cases); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 03–cv–1681 (LAP), 2004 WL 2199547, at *12 (S.D.N.Y. Sept. 29, 2004) (citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997)) ("The Second Circuit has interpreted § 302(a)(2) to require that the tortious act itself physically be performed within New York State.") (internal marks and quotations omitted); *Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, 11–cv–5875 (SJF)(ETB), 2013 WL 80181, at *9 (E.D.N.Y. Jan. 2, 2013) ("Section 302(a)(2) confers personal jurisdiction over a non-domiciliary defendant only when they commit acts within the state."); *Roth v. El Al Israel Airlines, Ltd.*, 709 F.Supp. 487, 490 (S.D.N.Y. 1989) ("Section 302(a)(2) requires that the tort be committed in New York and defendant must actually be in New York when the tort is committed").

Given Second Circuit precedent, the Court must apply the majority rule requiring the defendant to physically commit the tortious act in New York. *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803–04 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016); *see also Bank Brussels Lambert*, 171 F.3d at 790; *accord Stein v. Annenberg Research Inst.*, 90–cv5224 (LLS), 1991 WL 143400, at *3 (S.D.N.Y. July 19, 1991) (citing *Fox v. Boucher*, 794 F.2d 34 (2d Cir.1986)) (observing that "[i]n contrast to the conflicting authority in the state courts, the federal cases construing § 302(a)(2) ... have uniformly held that jurisdiction under the section cannot be predicated on telephone calls made or letters mailed into this State").

Here, Plaintiff makes no allegation that Whole Foods's alleged tortious acts—which included terminating Plaintiff and refusing to provide workplace accommodations—took place in New York.  To the contrary, Plaintiff was denied workplace accommodations and ultimately

terminated by a Whole Foods located in Greenwich, Connecticut.  (Am. Compl. at Ex. A.)  Accordingly, Defendant is not subject to this Court's personal jurisdiction under § 302(a)(2).

IV.     **Specific Jurisdiction: N.Y. C.P.L.R. § 302(a)(3) (Tortuous Conduct Outside New York)**

N.Y. C.P.L.R. § 302(a)(3) ("§ 302(a)(3)") provides that personal jurisdiction exists over a non-domiciliary defendant that "commits a tortious act without the state causing injury to person or property within the state ... if [she] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."  *Spin Master Ltd.*, 463 F. Supp. 3d at 365 (quoting *Penguin Grp.*, 16 N.Y.3d at 302).

To determine an injury has occurred within the state, courts apply a "situs-of-injury test, which asks [courts] to locate the original event which caused the injury."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal quotations omitted).  The "situs" of an injury is not "where the resultant damages are felt by the plaintiff"; instead, the "situs" is the "location of the original event which caused the injury."  *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (finding plaintiff's injury occurred in New Jersey, where he was employed, not in New York, where he resided and suffered financial loss as a result of the injury).  *Lear v. Royal*

*Caribbean Cruises Ltd.,* No. 1:20-CV-4660-GHW, 2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021), is instructive.  In *Lear*, the court declined to exercise jurisdiction, pursuant to N.Y. C.P.L.R. § 302(a)(3), over a New York resident who alleged his out-of-state employer terminated him for reasons related to his disability.  2021 WL 1299489, at *10–11.  The Court observed that the plaintiff "never worked in New York" and was "not expected to perform any portion of his work" there.  *Id.* at *10.  The Court concluded that the plaintiff's "presence in New York at the time of his hiring and [the defendant's] decision not to proceed with his employment—together with the fact that he felt the consequences of that decision in New York—[did] not make New York the place of the original event that caused his injury." *Id.*

Here, Plaintiff makes no allegation that he ever "worked in New York" or was otherwise "expected to perform any portion of his work" in New York.  *Id.*  As discussed earlier, Plaintiff only worked at a Whole Foods located in Greenwich, Connecticut.  (Am. Compl. at Ex. A; Castillo Dec. at ¶ 4.)  Even though Plaintiff alleges he lived in New York "at the time of his hiring and [Whole Foods's] decision not to proceed with his employment" and that "he felt the consequences of that decision in New York," these allegations "do not make New York the place of the original event that cause his injury."  2021 WL 1299489, at *10.  Based on Plaintiff's Amended Complaint, that place is Connecticut.  (Am. Compl. at Ex. A.)  In addition, Plaintiff fails to assert any facts to suggest "the defendant expected or should reasonably have expected the act to have consequences in New York."  *Spin Master Ltd.*, 463 F. Supp. 3d at 365.  Accordingly, Defendant is not subject to this Court's personal jurisdiction under § 302(a)(3).

### V.  Venue: 28 U.S.C. § 1406(a)

When a case is filed in a district in which venue is improper, the court shall dismiss the case or, "if it be in the interest of justice, transfer such case to any district . . . in which it could

have been brought." 28 U.S.C. § 1406(a). Courts enjoy "considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005). One "compelling reason" to transfer a case—as opposed to dismissing it—is when a plaintiff's case "would be time-barred on refiling in the proper forum." *Id.*

 Here, the transfer is in the interest of justice: transfer "obviates the need for Plaintiff to refile the action in a proper jurisdiction," *see Lear*, 2021 WL 1299489, at *13 (transferring to Southern District of Florida, which had personal jurisdiction over all defendants), and it also "alleviate[s] the burden of statutes of limitations operating as 'procedural obstacles' to merits consideration," *Daniel*, 428 F.3d at 435 (citing and quoting *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978)). As Defendant concedes in its moving papers (*see* generally ECF Nos. 18, 20), the District of Connecticut is where the alleged tortious activity took place, where Defendant conducts business, and where Plaintiff should have filed suit. As such, venue would be proper there. Accordingly, this Court respectfully directs that the action be transferred to the District of Connecticut.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part. The Court determines that it lacks personal jurisdiction over the Defendant. In the interest of justice, however, the Court respectfully directs the Clerk of the Court to TRANSFER the action without delay to the District of Connecticut, which based on the pleadings has personal jurisdiction over the Defendant.

Because this Court does not have personal jurisdiction over the Defendant, this Court declines to rule on the merits of Plaintiff's claims. *See, e.g., One Techs., LLC v. Amazon.com,*

*Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) ("Because the District Court had no jurisdiction over Inc. and because venue was improper as to Services, it lack[ed] power to dismiss a complaint for failure to state a claim" (internal quotations omitted).).

The Clerk of Court is directed to terminate the motion at ECF No. 17. The Clerk of Court need not adhere to Local Rule 83.1 and may transfer this action to the District of Connecticut immediately.

Dated:   February 28, 2023                                      SO ORDERED:
         White Plains, New York

                                                   _____
                                                        NELSON S. ROMÁN
                                                   United States District Judge